

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable R. C. Wilson
County Auditor
Gray County
Pampa, Texas

Dear Sir:

Opinion No. 0-2329
Re: What county fund would be charged with the expense of providing facilities or financial aid for federal and state agencies set out in Art. 2351b-2?

  Your recent request for an opinion of this department on the above stated question has been received.

  Your letter reads in part as follows:

  "Please advise us what county fund would be charged with the expense of providing facilities or financial aid for Federal and State agencies set out in Article 2351b-2. The specific projects are a weather bureau and a park."

  Article 2351b-2, Vernon's Annotated Civil Statutes, reads as follows:

  "From and after the date of passage of this Act the Commissioners Courts in all counties having a population of not less than twenty-two thousand and fifty (22,050) and not more than twenty-three thousand (23,000), according to the last preceding Federal Census, shall have the power and authority to provide for facilities and such financial aid as the said Commissioners Courts may deem necessary to Federal or State government agencies and bureaus having activities or maintaining projects within the county in which the said Commissioners Court is located. Acts 1939, 46th Leg., H. B. #980, § 1."

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable R. C. Wilson, page 2

Section 56, Article III of the State Constitution reads in part as follows:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special laws, authorizing . . . regulating the affairs of counties, cities, towns, wards or school districts; . . . and in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the legislature from passing special laws for the preservation of game and fish of this State in certain localities."

The case of Smith vs. State, 49 SW 2d 739, holds in effect that if substantial reason for classifying municipalities by population appears, such classification and legislation applicable to such classification is generally sustained. However, the constitutional prohibition against special laws cannot be evaded by making laws applicable to a pretended class, and that a statute classifying municipalities by population is "special" if the population does not afford a fair basis for classification; if the statute merely designates a single municipality under the guise of classifying by population; and that a valid classification of municipalities by population must not exclude other municipalities from entering such classification on attaining the specified population.

We quote from this case as follows:

"In this State it is the rule that the Legislature cannot evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class, which is, in fact, no class. Clark vs. Finley, supra. The court in other jurisdictions have given effect to the same principle. Com. v. Patton, 88 Pac. 258; Board of Commissioners of Owen County, et al v. Spangler, et al, 159 Ind. 575, 65 NE 743. In Clark v. Finley, supra, the Supreme Court of our State said:

Honorable R. C. Wilson, page 3

"'In so far as the courts which under-
take to define the basis upon which the
classification must rest hold that the Legis-
lature cannot, by a pretended classification,
evade a constitutional restriction, we fully
concur with them.  But if they hold that a
classification which does not manifest a pur-
pose to evade the Constitution is not suffi-
cient to support a statute as a general law
merely because, in the court's opinion, the
classification is unreasonable, we are not
prepared to concur.  To what class or classes
of persons or things it should apply is, as
a general rule, a legislative question.  When
the intent of the Legislature is clear, the
policy of the law is a matter which does not
concern the courts.'

"If the classification of cities or coun-
ties is based on population, whether an act is
regarded as special and whether its operation
is uniform throughout the State, depend upon
whether population affords a fair basis for
the classification with reference to the mat-
ters to which it relates, and whether the re-
sult it accomplishes is in fact the real clas-
sification upon that basis, and not a designa-
tion of a single city or county to which alone
it shall apply, under the guise of such clas-
sification. Parker-Washington County v. Kansas
City, 73 Kan. 722, 85 P. 781." (Also see the
cases of Ex parte Sizemore, 8 SW (2d) 134, and
Randolph v. State, 36 SW 2d 484).

The case of Bexar County v. Tynan, et al, 97 SW
2d 467, holds in effect that the Legislature may on a pro-
per and reasonable classification enact a general law which,
at the time of its enactment, is applicable to only one
county, provided the application is not so inflexibly fixed
as to prevent it ever becoming applicable to other counties
and that the Legislature may classify counties on basis of
population for purposes of fixing compensation of county
and precinct officers, but such classification must be based
on real distinction and must not be an arbitrary device to
give what is in substance a local or special law, the form
of a general law.  And the case further holds that the courts
in determining whether a law is public, general, special or

Honorable R. C. Wilson, page 4

local, will look to the substance and practical operation
rather than to its title, form, phraseology, since other-
wise a prohibition of the fundamental law against special
legislation would be nugatory; and to justify placing one
county in a very limited and restricted classification by
the Legislature, there must be some reasonable relation
between the situation of the counties classified and pur-
poses and objects to be attained, and classification can-
not be adopted arbitrarily on a ground which has no founda-
tion in difference of situation or circumstances of counties
placed in different classes.  The act reducing salaries of
officers in counties of over two hundred and ninety thousand
and less than three hundred and ten thousand population was
held unreasonable and arbitrary in its classification and
void as a special law.

We quote from the above mentioned opinion as fol-
lows:

"The rule is that a classification can-
not be adopted arbitrarily upon a ground which
has no foundation in difference of situation
or circumstances of the municipalities placed
in the different classes.  There must be some
reasonable relation between the situation of
municipalities classified in the purpose and
the object to be attained.  There must be some-
thing.... which in some reasonable degree ac-
counts for the division into classes."

Article 2351b-2, supra, applies only to counties
having a population of not less than 22,050 and not more
than 23,000, according to the last preceding Federal census.
The object and purpose of the statute under consideration is
to permit commissioners' court of the counties coming within
the above designated population brackets to provide for
facilities and such financial aid as the said commissioners'
court may deem necessary to Federal or state government
agencies and bureaus having activities or maintaining pro-
jects within the county in which the commissioners' court
is located.  A natural class, would include all the counties
in the state.  The above mentioned statute authorizes the
commissioners' court in counties having a population of not
less than 22,050 and not more than 23,000 the additional
power and authority as set out in the statute.  The number

Honorable R. C. Wilson, page 5

of inhabitants residing within the county, alone, cannot serve in any reasonable or natural manner to indicate the necessity or desirability of permitting such county through its commissioners' court to exercise the power and authority as provided in Article 2351b-2. We think that the above classification is a mere designation which is no classification at all, but, on the contrary, as inverted and discriminatory as the law considered by the Supreme Court in the case of Bexar County vs. Tynan, supra.

As above stated we have here an instance of arbitrary designation, rather than classification. The above quoted statute attempts to regulate the affairs of those counties coming within the above designated population brackets in a manner violative of Article III, Section 56, of the State Constitution. The last mentioned section of the Constitution, is designed, in part, to insure that the system of county government shall be as uniform as is possible. It is intended to prevent the passage of laws which discriminate between the counties of this state without adequate and substantial difference in the characteristics of the individual counties indicative, rationally, of the necessity for the discrimination.

In view of the foregoing, you are respectfully advised that it is the opinion of this department that the law under consideration clearly violates the provisions of Article III, Section 56, of the State Constitution and its manifest spirit and purpose, and it is therefore unconstitutional and void.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant

AW:jm

APPROVED MAY 23, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY